THE UNITED NEW JERSEY RAILROAD AND CANAL COM-PANY AND THE PENNSYLVANIA RAILROAD COMPANY, PLAINTIFFS IN ERROR, v. THE MAYOR AND ALDER-MEN OF JERSEY CITY ET AL., DEFENDANTS IN ERROR.

| | |
|---|---|
| 55 | 129 |
| 57 | 569 |
| 57 | 641 |
| 55 | 129 |
| 60 | 62 |
| 55 | 129 |
| f62 | 563 |
| 55 | 129 |
| a63 | 121 |
| 55 | 129 |
| 64 | 138 |
| 64 | 487 |

The authorized right of way of a railroad duly acquired, over which a railway has been constructed and is in good faith operated, is used for railroad purposes within the meaning of the act of April 10th, 1884 (*Pamph. L.*, p. 142), although it may not, for the time being, be wholly occupied by tracks or other railroad appliances.

On error to the Supreme Court.

For the plaintiffs in error, *James B. Vredenburgh.*

For the defendants in error, *William D. Edwards* and *James P. Northrop.*

The opinion of the court was delivered by

THE CHANCELLOR.   The judgment reviewed determined that a strip of land four hundred feet long and sixty-five feet wide, belonging to the United New Jersey Railroad and Canal Company, and by it leased to the Pennsylvania Railroad Company, was properly assessable by the local assessors of the city of Jersey City for the taxes of the years 1884, 1885, 1886 and 1887, and that taxes assessed thereon in those years which were subsequently adjusted by commissioners acting in pur-suance of the provisions of the act of the legislature of March 30th, 1886, entitled "An act concerning the settlement and collection of arrearages of unpaid taxes and assessments and water rates or water rents in cities of this state," &c., com-

monly called the Martin act, should be paid to the municipality of Jersey City, and that taxes assessed thereon, in the same years, by the state board of assessors, and paid by the plaintiffs in error, should be refunded to them by the state treasurer.

The strip of land in question is a portion of the right of way one hundred feet wide which was acquired by the United New Jersey Railroad and Canal Company prior to the year 1872, in virtue of authority granted to it by the act of the legislature of March 30th, 1868 (*Pamph. L., p.* 551), to construct and build a branch railroad, not exceeding one hundred feet in width, from Harsimus Cove, on the Hudson river, to a point in the line of its then existing railroad, in or eastward of the deep cut in Bergen Hill, " with as many sets of tracks and rails as said Directors shall deem necessary, and with power to procure the right of way for such branch railroad."

Shortly after acquiring the way thus authorized the United New Jersey Railroad and Canal Company built over the entire length of it, on its southerly side, two railroad tracks upon a structure elevated above the level of the streets of Jersey City, which, when the assessments for taxes complained of were levied, actually occupied thirty-five feet of the southerly side of the right of way. The unoccupied remainder of that right of way, at the point in question, bounds on Sixth, Monmouth and Brunswick streets, in Jersey City, and is the land assessed. Until after the questioned assessments the two tracks originally constructed adequately answered the requirements of traffic over the branch road, but lately it has become necessary to add an additional track and widen the elevated structure some twenty-five feet. From the time of acquiring the right of way until after the levying of the taxes considered, that portion of the right of way which was unoccupied by tracks was held vacant in anticipation of demand for increased trackage and other structures incident to the operation of the branch road and for use in process of the construction of the elevated tracks, but for no other purpose. It was not rented or otherwise used for profit.

The act of April 10th, 1884, entitled "An act for the taxation of railroad and canal property" (*Pamph. L., p.* 142), provides that all property of any railroad company "*used for railroad purposes*" shall be assessed by a state board of assessors· and not by the assessors of the municipalities in which they lie.

The plaintiffs contend that the lands in question, within the meaning of the act last referred to, are used for railroad purposes and were properly assessed by the state board of assessors and not properly assessed by the authorities of Jersey City. In view of the facts stated, it is observed that the precise question now presented is, Whether a portion of the right of way of a railroad company which is not, for the time being, actually covered by tracks, erections or appliances necessarily incident to the operation of a railroad, although acquired and strictly held for that purpose and use in railroad construction, is, within contemplation of the act of 1884, "*used for railroad purposes?*"

The question is an important one, for it is within the knowledge of everyone who is observant of railroads that the entire right of way is rarely occupied. This is not so noticeable in the older roads, whose increasing business has demanded additional trackage, yet even with such roads unoccupied portions of the right of way are not uncommon. Are we to say that each of those portions is not used for railroad purposes merely because it is not presently and all the time in actual occupation? Such a construction of the statute appears to us to be too literal and narrow. We think that where an authorized right of way has been acquired, over which a railroad has been constructed and is in good faith operated, which right of way is not devoted to another purpose, it is used for railroad purposes within the meaning of the statute considered, although it may not, for the time being, be wholly occupied by tracks or other railroad appliances. That part of it which awaits railroad occupation upon the demand of necessity is in use, like the curtilage to a dwelling-house or the sides of a country highway. It does not stand in the category of those

quantities of land, limitless by law, which railroad companies frequently acquire in speculative anticipation of the future wants of their roads.    It is the land which the legislature in its wisdom has deemed to be reasonably necessary to answer the ordinary and emergent uses of a railway and ensure the continued, convenient and safe accommodation of the public. Its dimensions are limited by the law which devotes it to a special purpose.

It, however, is to be added, that we are also of opinion that when any part of the lands which lie within such a right of way are used or appropriated to purposes not incident to the proper construction, maintenance and management of the railroad or to the use of it by the corporation as a carrier of goods and passengers, it cannot then be said to be used for railroad purposes and will be the subject of local taxation. We think that the local tax complained of should be set aside.

Our conclusion leads to the reversal of the judgment below.

*For affirmance*—DIXON, BOGERT, CLEMENT.    3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, MAGIE, REED, BROWN, SMITH.    7.