The Illinois Central Railroad Company

*v.*

The City of Chicago.

*Filed at Ottawa May 12, 1892.*

1. Special assessments—*measure of damages—affected by the use of the property.* In a proceeding to condemn lands for public purposes, when the lands are restricted by statute or by the instrument under which the owner holds title, the measure of compensation to the owner for the property taken will be their value to him for the special use to which the lands are restricted.

2. Where land is held by an individual, the benefits to accrue to it by a local public improvement are not to be determined alone by the market value of the property for the use for which it is devoted at the time by the owner, but the market value may be shown for any use for which the property may properly be applied, as the owner may change the use at any time he may see proper to do so; but when the law has devoted the property permanently to a particular use, it can only properly be benefited to the extent that its fitness for that particular use is increased and enlarged.

3. On a special assessment proceeding, when land is restricted by statute to a particular use, as, for railroad purposes, and can not be applied to any other use, the measure of the benefit which an improvement will confer on the land is its increased value for the special use to which it may by statute be restricted.

4. Same—*must not exceed benefits.* A special assessment to pay for a local public improvement must not in any case exceed the benefit which will be conferred on the property assessed by the construction of the

improvement, and the benefit must be real and actual, and not one resting merely in conjecture.

5. Same—*application for confirmation—verdict of jury where benefits are less than the assessment.* The jury, on an application for the confirmation of a special assessment, should not, in case they find the benefits to the land to be less than the assessment thereon, render a general verdict for the defendant, but they should be required to report, by their verdict, the amount of said benefits as found by them.

6. Illinois Central Railroad Company—*title and use of its right of way.* The right of way of the Illinois Central Railroad Company is held by that company only for railroad purposes and uses, and it can not lawfully apply such right of way to any other use or purpose than such as is necessary for the maintenance and operation of its railroad.

7. Same—*its duty to operate its road.* The company owes duties and obligations to the State from whom it accepted its charter. It is bound to maintain and operate its road, and execute the different obligations for which it was created.

Appeal from the County Court of Cook county; the Hon. D. B. Sherwood, Judge, presiding.

This is an appeal from a judgment of the county court of Cook county, confirming a special assessment against the Illinois Central Railroad Company for the sum of $3665.80, assessed for the purpose of improving Madison avenue, in Chicago. Madison avenue abuts upon and runs parallel with the right of way of the Illinois Central railroad from Sixty-sixth street north to a point a little south of Sixty-fifth street, —a distance of ten hundred and ninety feet,—on the west line of said right of way. A map found in the record shows the relative positions of the avenue and right of way. The avenue does not lead to any depot or station of the railroad company. The assessment, as appears from the assessment roll, was as follows: "Ill. Central R. R.—Part of Sec. 23, Town 38 N., R. 14, being a strip of land 200 ft. in width and 1080 ft. in length, lying parallel to and adjoining Madison ave. on the east and north of 66th st. extended, occupied by said railroad company as right of way for its main and side-tracks, $3665.80."

It appears from the evidence, that in this right of way the railroad company has constructed nine distinct railroad tracks, which are used by the company for the passage of trains in its business as a common carrier. The company has a depot north on Sixty-third street and south on Sixty-seventh street, but along the right of way assessed there is no depot or station. A wire fence has been constructed along the western boundary of the right of way, separating it from the avenue. The road-bed is an embankment, the top of which is from two and one-half to three feet higher than the level of the avenue. A part of the right of way from the foot of the embankment, on which the nine tracks are laid, to the western line of the right of way, is a space thirty-six feet wide, and upon this space or strip no tracks are laid. From this thirty-six foot space earth was taken for the purpose of making the embankment, thus converting the space into a ditch from two to two and one-half feet deep, thirty-five and one-half feet wide at the top, and twenty or twenty-five feet wide at the bottom.

On the trial the railroad company introduced five witnesses, who all testified that the improvement was no benefit whatever to the railroad company. On the other hand, the city called two witnesses, who gave it as their opinion that the improvement was a benefit to the right of way, the premises of the railroad company.

Mr. C. V. Gevin, for the appellant:

The statute did not authorize the commissioners to return the assessment against a "right of way." *People* v. *Railroad Co.* 96 Ill. 369; *State* v. *District Court,* 31 Minn. 354.

The benefit to the railroad right of way must be a benefit for the special use to which, by law, it is devoted. *Railroad Co.* v. *Catholic Bishop,* 119 Ill. 525; *Railroad Co.* v. *Railroad Co.* 112 id. 589.

The right of way, from its nature and situation, could not be benefited by the improvement. *Railroad Co.* v. *Elizabeth,*

37 N. J. L. 330; *Philadelphia* v. *Railroad Co.* 33 Pa. St. 422; *Railroad Co.* v. *Philadelphia,* 88 id. 41; *Railroad Co.* v. *New Haven,* 42 Conn. 279; *Railroad Co.* v. *East St. Louis,* 134 Ill. 689.

Mr. Charles C. Gilbert, and Mr. John S. Miller, for the appellee:

It is no objection to an assessment for a local work, that the property assessed is used for a purpose that will not be specially advanced by the improvement. Cooley on Taxation, (2d ed.) 652; *Railroad Co.* v. *Spearman,* 12 Iowa, 112; *Railroad Co.* v. *Connelly,* 12 Ohio St. 159; *New Haven* v. *Railroad Co.* 38 Conn. 255; *Railway Co.* v. *Chicago,* 90 Ill. 573; *Railroad Co.* v. *Hanna,* 68 Ind. 562; *Ludlow* v. *Trustees,* 78 Ky. 357; *Chicago* v. *Baer,* 41 Ill. 306; *Parmelee* v. *Chicago,* 60 id. 267.

In the case of *Railway Co.* v. *People ex rel.* 120 Ill. 104, the appellant sought to escape an assessment for benefits apparently upon the ground now urged by appellant in this case. Counsel for appellant in the above case presented to the court almost the identical cases upon which counsel for appellant in the case at bar relies, notably *Park Comrs. case,* 107 Ill. 105; *Philadelphia* v. *Railway Co.* 33 Pa. St. 41; *Railroad Co.* v. *Philadelphia,* 88 id. 424; 36 Conn. 255; 42 id. 279.

In *Canal Trustees* v. *Chicago,* 12 Ill. 403, it was held that the property of the trustees of the Illinois and Michigan Canal might be specially benefited by the opening of a street, and that it was therefore to be included in a special assessment for that purpose. In *Ottawa* v. *Free Church,* 20 Ill. 423, it was held that church property, though not liable to ordinary taxation, was liable to special assessment. In *County of McLean* v. *Bloomington,* 106 id. 209, it was held that the public square in the city of Bloomington, belonging to the county, was liable to be specially taxed for the improvement of the adjacent streets.

Mr. Justice Craig delivered the opinion of the Court:

Where the evidence is conflicting, as it was in the case under consideration, it is very important that the jury should be accurately instructed on the questions of law involved in the case. If they are not so instructed, there is no certainty that a correct result will be reached. The court gave for the defendant a short instruction, No. 1, as asked. No. 2 the court modified, and gave it as modified, and refused Nos. 3 and 4, which were as follows:

"3. The court instructs the jury that the right of way of the Illinois Central Railroad Company, which is assessed for the improvement of Madison avenue, is held by said company only for railroad purposes and uses, and the said company can not lawfully apply said right of way to any other use or purpose than such as is necessary for the operation and maintenance of its railroad.

"4. You are instructed that the Illinois Central Railroad Company, under its charter and the law governing it, is subject to the public duty perpetually to maintain and operate its railway, and that it has no legal right to divert from the uses of the maintenance and operation of the same the land of the company assessed in this case. You are therefore instructed, that in determining whether the same will be benefited by the improvement of Madison avenue, as proposed, you must determine whether or not such land will be benefited for the particular uses to which it is applied, and if you find, from all the evidence, that said land will not be benefited to the amount assessed against it herein for the uses or purposes of the railway of the Illinois Central Railroad Company in the maintenance or operation thereof, by reason of the curbing, grading and macadamizing of Madison avenue, as proposed in this proceeding, your verdict will be for the Illinois Central Railroad Company."

No other instructions given by the court contained the same principle announced in the two refused ones.

33 —141 Ill.

The first section of the act of Congress of September 20, 1850, which granted lands to the State of Illinois to aid in the construction of the Illinois Central railroad, gave to the State the right of way through the public lands for the construction of a railroad, the right of way over the public lands being a strip of land two hundred feet wide. (9 U. S. Stat. at Large, p. 466.) Following the act of Congress, the act of February 10, 1851, incorporating the Illinois Central Railroad Company, was passed. Section 15 of the act contains the following: "The right of way over and through lands owned by the State is hereby ceded and granted to said corporation for the only and sole purpose of surveying, locating, constructing, completing, altering, maintaining and operating said road and branches, as is in this act provided."

It is thus plain that under the act of Congress donating the lands for the constructing of a railroad, and the charter of the railroad company, the strip of land—the right of way—is devoted to a certain specified purpose, and it can not be diverted from that purpose. The Illinois Central Railroad Company owes duties and obligations to the State from whom it accepted its charter. It is bound to maintain and operate its road, and perform the different obligations for which it was created. This two hundred foot strip of land the railroad holds and enjoys as its right of way and road-bed, donated to it for that purpose. Under its charter it is clothed with power to use this strip for railroad purposes, but for no other purpose. If the strip of land belonged to an individual, such person might lay it off into town or city lots, and dispose of the lots in the market. But the railroad company has no such power. Here is a particular, specified use, fixed by law, which it is beyond the power of the owner to change. Where such is the case, what is the correct rule in ascertaining whether a tract of land is benefited by an improvement?

When land is held by an individual, the benefits are not to be determined alone by the market value of the property for

the use to which it was then devoted by the owner, but the market value may be shown for any use for which the property may properly be used, as the owner may change the use of the land at any time, at his own will or pleasure. But in a case like the one under consideration, where the law has devoted the property permanently to a particular use, it would seem that it could only properly be benefited to the extent that its fitness to that particular use was increased and enlarged. In a proceeding to condemn lands for public purposes, where the lands are restricted by statute or the instrument under which the owner holds title, to a particular use, the measure of compensation to the owner for the lands taken will be their value to him for the special use to which the lands are restricted. This doctrine was announced in *Railroad Co.* v. *Catholic Bishop,* 119 Ill. 529. So, also, in *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co.* 112 Ill. 590, where it was held: "Where, in the nature of things, there can be no market value of a piece of property, by reason of being used in connection with and as a part of some extensive business or enterprise, its value must be determined by the uses to which it is applied."

In a proceeding to condemn lands, as a general rule, the owner is entitled to recover the fair market value of the lands taken; and in a proceeding by special assessment, as a general rule, the inquiry is to what extent the market value of the premises has been increased by the improvement. If, therefore, in the former case, where the owner is restricted to a particular use, the measure of compensation will be its value for the special use to which he is restricted, upon the same principle it must follow in a special assessment proceeding, where land is restricted by statute to a particular use and can not be applied to any other, the true measure of benefit which an improvement will confer on the land is its increased value for the special use to which it may by statute be restricted. In a proceeding by special assessment in no

case can the assessment exceed the benefit which will be conferred on the property by the construction of the improvement. The benefit must be a real, actual benefit,—not one resting in conjecture; and while it was proper to consider, in this case, all benefits conferred upon the defendant's right of way, for all railroad purposes, by the construction of the improvement, it is manifest that it would be unjust to charge upon the land benefits which might, in the opinions of witnesses, be conferred on .the land should it be devoted to other purposes, when the railroad company is prohibited by law from using the land for any but railroad purposes.

From what has been said it follows that the third instruction was proper, and the court erred in refusing it.

But the fourth instruction seems to be technically inaccurate in failing to require the jury to find whether or not, and to what extent, the lands of said railroad company would be benefited in view of any railroad uses to which, under all the circumstances shown by the evidence, it might or probably would be applied by said railroad company, as well as in view of the particular railroad uses to which it is now applied; and also in directing the jury, in case they found the benefits to said land less than the amount of the assessment, to render a general verdict in favor of the railroad company. If they found the amount of actual benefits less than the amount assessed, they should have been required to report, by their verdict, the amount of said benefits as found by them. Section 31, article 9, of the general act in relation to cities and villages, under which the proceedings were had, requires "that if it shall appear that the premises of the objector are assessed more or less than they will be benefited, or more or less than their proportionate share of the cost of the improvement, the jury shall so find, and also find the amount for which the premises ought to be assessed." 1 Starr & Curtis' Stat. 498.

For the error in refusing to give said third instruction, the judgment will be reversed and the cause remanded.

*Judgment reversed.*